CROSNER LEGAL, P.C.
Michael R. Crosner (SBN 41299)
Zachary M. Crosner (SBN 272295)
Chad A. Saunders (SBN 257810)
Craig W. Straub (SBN 249032)
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429
mike@crosnerlegal.com
zach@crosnerlegal.com
chad@crosnerlegal.com
craig@crosnerlegal.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKOLAS CHAPLIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE CONSUMER HEALTHCARE, INC. and MEDTECH PRODUCTS INC.,<br><br>Defendants. | Case No. 22-cv-09201-AGT<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Honorable Magistrate Judge Alex G. Tse<br><br>Complaint Filed:  November 22, 2022<br>Removal Date:  December 30, 2022<br>Trial Date:  Not Set<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nikolas Chaplin ("Plaintiff") brings this action against Defendant Prestige Consumer Healthcare, Inc. and Medtech Products Inc. ("Defendants"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.  This is a consumer protection action that seeks to remedy the unlawful, deceptive, and misleading business practices of Defendants with respect to the marketing and sales of their Little Remedies Gripe Water ("Little Remedies" or "Products").

2.  Defendants distribute, market, and sell Little Remedies as an effective remedy for the symptoms associated with colic in newborn babies.

3.  The Little Remedies advertising is unlawful because Defendants intend that the product is for use as a drug which requires premarket approval from federal authorities. Defendants have failed to obtain this approval and is selling an illegal product. The Food and Drug Administration has stated that these types of "colic relief" advertising claims are unlawful.

4.  Further, none of the ingredients in Little Remedies provide the advertised benefits. Little Remedies is not "highly effective" at treating the symptoms of colic as Defendants contend. Scientific studies have found that gripe water is ineffective for treating colic in newborns and may in fact, at higher doses, increase the risk of vomiting and constipation. No respected medical practitioner recommends the use of herbal remedies or gripe water for use in colicky infants. Defendants are peddling snake oil at the expense of desperate consumers.

5.  Throughout the Class Period Defendants manufactured, sold, and distributed Little Remedies using a marketing and advertising campaign that is centered around claims that the Little Remedies are "Everything [newborns] need. Nothing they don't," "A highly-effective herbal supplement which eases stomach discomfort often associated with colic and hiccups," and "provides fast and gentle relief to your little one's gas/discomfort. This highly-effective herbal supplement helps to ease stomach distress."

6.      Defendants communicate the same substantive colic symptom relief message throughout its advertising and marketing of Little Remedies, including at point of sale and on the front of the Little Remedies packaging. Accordingly, each consumer who has purchased Little Remedies has been exposed to Defendants' unlawful and misleading advertising.

7.      Defendants' Little Remedies do not provide effective relief for any colic symptoms. This is not surprising, as Little Remedies' main ingredients are water and vegetable glycerin—a common sugar alcohol.

8.      As a direct and proximate result of Defendants' unlawful, false, and misleading advertising claims and marketing practices, Defendants have caused Plaintiff and the members of the Class to purchase an illegal and falsely advertised product which does not, and cannot, perform as represented. Plaintiff and other similarly situated consumers have been harmed in the amount they paid for Little Remedies.

9.      Plaintiff brings this action individually, and on behalf of all purchasers of Little Remedies Gripe Water products, to halt Defendants' unlawful sales and marketing of these products and for violations of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq*., False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, breach of express warranty, breach of implied warranty of fitness for a particular purpose, and for unjust enrichment.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendants have intentionally availed itself of the markets within California through its advertising, marketing and sales of Little Remedies

to California consumers, including Plaintiff. Defendants' sale of the Products in California is not an isolated occurrence, but arises from the efforts of the Defendants, as the manufacturer and distributor of the Products. These California sales are substantial and the profits from the sale of the Products in California derive substantial revenue for the Defendants. It is not unreasonable to subject Defendants to suit in in California because the Products are source of the unlawful conduct described herein. Defendants derive substantial revenue for the sale of the Products in California. For example, California accounts for approximately 12.5% of the United States population.[1] In 2021, California ranked number one in retail trade GDP,[2] indicating that substantial amounts of retail products sell in California compared to other states. California is also the state with the most retail stores.[3]

12.     Defendant Prestige Consumer Healthcare, Inc. ("Defendant Prestige") manufactures, markets, supplies, and advertises Little Remedies Gripe Water products throughout the United States and, in particular, within California. The unfair, unlawful, deceptive, and misleading advertising on the Products were prepared, authorized, ratified, and/or approved by Defendant Prestige and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Products. Defendant Prestige has continuous and systematic contacts with California and is thus subject to personal jurisdiction in California. Defendant Prestige has significant contacts with California: (1) Defendant Prestige purposefully and intentionally aimed the sale, marketing, and advertising of Little Remedies toward California; (2) this lawsuit arises out of those activities; (3) and Defendant Prestige knows the sale of its Little Remedies in California is likely to cause harm to consumers in California. Thus, it is foreseeable that Defendant Prestige's marketing and advertising to California consumers is likely to cause harm to California residents. In fact, Defendant Prestige was recently subject to litigation in the Central District of California for the sale of its Little Remedies infant acetaminophen products. *See Burchfield v. Prestige Consumer Healthcare*, 534 F. Supp. 3d 1192 (C.D. Cal. 2021). In Defendant Prestige's 2021 Form 10-k SEC filings it noted that "Substantially all of our remaining cash is held by a large regional bank with

---

[1] https://www.ppic.org/publication/californias-population/#
[2] https://www.statsamerica.org/sip/rank_list.aspx?rank_label=gsp2_a&item_in=35
[3] https://www.worldatlas.com/articles/which-state-has-the-most-retail-stores.html

FIRST AMENDED CLASS ACTION COMPLAINT

1    headquarters in California." Defendant has also noted in public filings that it is concerned about

2    litigation from selling its products in California stating, "Demorex products contain coal tar which

3    the State of California has determined allegedly causes cancer. Consequently, in order to comply

4    with California law and to mitigate our risks, the Denorex packaging contains a warning to that

5    effect."

6          13.    Defendant Prestige has purposefully and intentionally aimed the sale, marketing, and

7    advertising of Little Remedies toward California through its website, littleremedies.com, which

8    markets and advertises Little Remedies to Californians. *See* **Exhibit 6** (littleremedies.com

9    screenshots). When a California consumer clicks on the Little Remedies Gripe Water product image,

10   the consumer is brought to a "find Now" button which directs the consumer to stores in California

11   that sell the Products. **Exhibit 6** at 3-5. Defendant Prestige's website has a "Contact Us" page with

12   instructions to write to "Prestige Consumer Healthcare Inc." with attention to Defendant Prestige's

13   "Consumer Affairs." **Exhibit 6** at 6. Each page of the littleremedies.com website states "©2023

14   Prestige Consumer Healthcare Inc." *See* **Exhibit** 6. Defendant Prestige's website also specifically

15   references that "California residents have the following right related to their personal information

16   [listing privacy rights]." *See* **Exhibit 6** at 7-9 (Privacy Policy). Defendant Prestige's website,

17   www.prestigebrands.com, also describes that the Little Remedies Gripe Water products are owned

18   by Defendant Prestige. *See* **Exhibit 7** (stating "Find Our Products" and listed "Little Remedies" as

19   its "brand"). On www.prestigebrands.com, Defendant Prestige proclaims that it owns the Little

20   Remedies brand:



FIRST AMENDED CLASS ACTION COMPLAINT

1   *See* **Exhibit 7.** When California consumers clicks on the "Little Remedies" button, they are brought

2   to a page which has two buttons. One directs the consumer to the littleremedies.com website, and

3   the other brings them to a page listing retail stores in California where they can purchase Defendant

4   Prestige's Little Remedies Gripe Water products in California. **Exhibit 7** at 2-3. Further, Defendant

5   Prestige specifically targets and advertises the Products by using a Facebook Meta Pixel on its

6   littleremedies.com website. Facebook, now "Meta," is a California company, and Defendant uses

7   Meta's advertising tool to specifically target and advertise the Little Remedies Products to California

8   consumers (Meta Pixel code displayed below):



19   14.   Defendant Prestige has also purposefully and intentionally aimed the sale, marketing,

20   and advertising of Little Remedies toward California by printing its name on every label of the

21   Products that is sold in California (highlighted below). Thus, it is foreseeable that Defendant

22   Prestige's marketing, advertising, and sale of Little Remedies to California consumers is likely to

23   cause harm to California residents especially considering that it specifically informs California

24   consumers that it is responsible for the Products' labeling by placing its name on the Products'

25   packaging:

Distributed by Medtech Products Inc., Tarrytown, NY 10591, a Prestige Consumer Healthcare company. Made in USA © 2021 Trade dress is owned by Medtech Products Inc.

15.     Defendant Medtech Products Inc. ("Defendant Medtech") is listed on the Products' packaging as a distributor of the Products. *See* **Exhibit 1**. According to the Products' packaging Defendant Medtech is a "Prestige Brands Company." *See* **Exhibit 1**. Defendant Medtech Products Inc.'s headquarters and facilities are in Tarrytown, New York. The Little Remedies trade dress is owned by Defendant Medtech Products Inc. *See* **Exhibit 1**. Defendant Medtech has significant contacts with California: (1) Defendant Medtech purposefully and intentionally aimed the sale, marketing, and advertising of Little Remedies toward California by distributing the Products to California and placing its name on the Products; (2) this lawsuit arises out of those activities; (3) and Defendant Medtech knows the sale of its Little Remedies in California is likely to cause harm to consumers in California. Thus, it is foreseeable that Defendant Medtech's distribution and sale to California consumers is likely to cause harm to California residents especially considering that it specifically informs California consumers that it is responsible for the Products' labeling by placing its name on the Products' packaging. Defendant Medtech is listed as a company formed in California on the California Secretary of State's website.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff purchased the unlawful Products in this District, and Defendant has deliberately marketed, advertised, and sold the Products within this District using the labeling advertisements at issue.

## PLAINTIFF SPECIFIC ALLEGATIONS

17.     Plaintiff Nikolas Chaplin is an individual consumer who, at all times relevant to this action, was a citizen of and resided in California. Before purchasing the Little Remedies Gripe Water products, Plaintiff saw Defendants' representations by reading the label of Little Remedies Gripe Water including Defendants' representations on the packaging labels that the products "Gently Relieves Stomach Discomfort from Gas, Colic + Hiccups" at Walgreens retail stores on numerous

occasions during the Class Period. In reliance on the claims at issue made on the label and on the belief that the products were legal to sell, Plaintiff purchased Little Remedies Gripe Water for his child that was suffering from colicky symptoms between approximately 2019 and 2020 at Walgreens retail stores in California, including in Alameda County. Relying on the product's colic relief representations, Plaintiff paid approximately $15 for Little Remedies Gripe Water. Plaintiff did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' labels or packaging that contradicted the prominent "Relieves Stomach Discomfort from Gas, Colic + Hiccups" on the front of the label. Had Plaintiff known the truth—that the Product was not legally sold and the representations he relied upon in making his purchase were unlawful, false, and deceptive—he would not have purchased the Little Remedies Gripe Water products. Plaintiff did not receive the benefit of the bargain, because Defendants' Little Remedies do not and cannot improve the symptoms of colic as advertised. By purchasing the illegally sold and falsely advertised product, Plaintiff suffered injury-in-fact and lost money.

18.    Plaintiff currently to desires to purchase Little Remedies Gripe Water and would purchase Little Remedies Gripe Water if it worked as advertised and complied with federal and state regulations. However, as a result of Defendants' ongoing deceptive and unlawful advertising, Plaintiff is unable to rely on the Little Remedies Gripe Water advertising when deciding whether to purchase Little Remedies Gripe Water. Thus, Plaintiff is threatened with a concrete and particularized legal harm (e.g., lost money from purchasing Little Remedies Gripe Water again). There is a sufficient likelihood that Plaintiff will again be wronged in a similar way by purchasing Little Remedies Gripe Water.

19.    Plaintiff understood that each purchase involved a direct transaction between himself and Defendant, because the product came with packaging, labeling, and other materials prepared by Defendant, including representations and warranties regarding the advertised claims.

## FACTUAL BACKGROUND

20.    Defendants' Little Remedies Gripe Water products are sold nationwide at a variety of retail chains, including Target, Rite Aid, Walgreens, and Walmart as well as many online retailers, such as Amazon.

21.     The packaging of Little Remedies Gripe Water at is depicted below:



*See also* **Exhibit 1** (Packaging and Labeling Exemplars).

22.     As shown above, the packaging for Little Remedies Gripe Water represents that it is a "Dietary Supplement"; "For Tummys" that is "Fast Acting." That the product is for "Newborn +"

"Safe for Newborns" "Gently Relieves Stomach Discomfort from Gas, Colic + Hiccups" and
"Gently Relieves Stomach Discomfort from Gas, Colic, Hiccups and Fussiness."

23.     On the side of the label, Little Remedies promotes itself as a "highly effective herbal
supplement which eases stomach discomfort often associated with gas, colic, and hiccups. Our
product is based on a time-tested formula from Europe that is over 100 years old":



24.     On the labeling, Defendants also claim that its "Little Remedies® Gripe Water is a
safe, gentle & effective herbal supplement which eases the discomfort associated with Gas, Colic,
Upset Stomach Hiccups:



25.     Little Remedies also warrants that is a legal "DIETARY SUPPLEMENT" by
printing this claim on the front of the packaging. *See* above; *see also* **Exhibit 1**. Highlighted on the
front of the Little Remedies packaging, Defendants represent that the Product it "Fast Acting"
warranting that it is an effective medicine. *See* above; *see also* **Exhibit 1**.

26.     On the other side of the product Defendants cherry-picks certain reviews to reinforce
the front-facing packaging panel and prints a sample customer review of the product: "When my
friends ask what I did when my son was colicky I refer them to gripe water! Thank you, it was for
sure a life saver!" *See* above; *see also* **Exhibit 1**.

27.     The only purported ingredients on the Little Remedies' packaging include 5mg of
"ginger root extract," and 4mg "fennel seed extract." Non-active "other ingredients" include

"purified water, organic agave [sugar], vegetable glycerin [sugar alcohol], natural ginger flavor, potassium sorbate, citric acid, xanthan gum."

28.     Upon information and belief, within the last couple of months Defendants have slightly reformulated Little Remedies which includes lemon balm extract and chamomile flower heads extract: "Foeniculum vulgare (Fennel) seed extract, purified water, organic agave syrup, glycerin, corn syrup, maltodextrin, melissa officinalis (lemon balm) leaf extract, natural ginger flavor, matricaria recutita (chamomile) flower heads extract, citric acid, potassium benzoate, xanthan gum."[4]

29.     None of the ingredients in Little Remedies have been shown to provide the claimed relief for colic symptoms including stomach discomfort associated with gas, colic, hiccups, and /or fussiness.[5] In fact, the scientific community recommends against the use of gripe water and does not recommend any of the ingredients in Little Remedies for use in colicky infants. The ingredients in Little Remedies are not effective at providing any of the advertised benefits.

30.     Not only are the ingredients in Little Remedies ineffective, but the serving size is too miniscule to even theoretically provide any possible relief. The ingredient label indicates that it contains 5 mg of ginger root extract and 4mg of fennel seed extract per dose. With a total serving size of 1 teaspoon (5 ml), the amount of ginger extract is equivalent to one one-thousandth of a teaspoon (0.0010) and the amount of fennel extract is equivalent to one one-thousand two-hundred and fiftieth of a teaspoon (0.0008). Substances in such trace amounts do not and cannot provide relief from the advertised symptoms.

---

[4]     This ingredient list was obtained from Defendants' website at https://www.littleremedies.com/remedies/stomach-gas-remedies/little-remedies-gripe-water-chamomile#ingredients (last visited Nov. 10, 2022).

[5]     Divya Jacob, *Why Is Gripe Water Banned?* MedicineNet available at https://www.medicinenet.com/why_is_gripe_water_banned/article.htm (last visited Nov. 9, 2022).

1
2
3

31.     Defendants further warrant that its Little Remedies is a dietary supplement which is legal to sell to consumers for personal use. However, as explained below, the products are not lawfully sold in the United States.

4

### DEFENDANTS' UNLAWFUL, FALSE, AND MISLEADING ADVERTISING

5
6

*Defendants' Little Remedies Unlawful Disease Claims*

7
8
9
10
11
12
13

32.     To legally sell a "dietary supplement" the manufacturer must, among other things, (1) have substantiation the statements on the label are truthful and not misleading; (2) the labeling may not claim or imply that the product can mitigate, treat, cure, or prevent disease; (3) there must be a prominent disclaimer that the Food and Drug Administration (FDA) has not evaluated the product and that the product is not intended to treat, cure, or prevent disease; and (4) the manufacturer must notify the FDA of the labeling claims within 30-days of marketing such claims. See 21 U.S.C. §§ 343(r)(6)(A)-(C). Defendants have failed to comply with these requirements.

14
15
16
17
18
19

33.     Infantile colic refers to a widespread clinical condition in infants that causes inconsolable crying, fussing, hiccups, stomach discomfort, and irritability. These symptoms range from being benign to life-threatening.[6] The only proven treatment of colic is dicyclomine hydrochloride, an anticholinergic drug. However, its use is discouraged due to side-effects. This has not stopped companies like Defendants from exploiting struggling parents seeking to calm their newborns exhibiting prolonged periods of distress.

20
21
22
23
24

34.     Infantile colic is known to have a significant impact on infants and their families. Defendants take advantage of these desperate parents by unlawfully advertising its Little Remedies Gripe Water as a treatment for colic and its symptoms. The FDA has publicly warned that claims of colic relief classify the product as an unapproved drug which may result in fines, up to one year in jail, a permanent or temporary injunction, or seizure. *See* 21 U.S.C. §§ 332-334.

25
26
27
28

---

[6]     Savino F & Tarasco V, New treatments for infant colic. Current Opinion in Pediatrics. 2010;22:000-000.

35.    In April 2020, the FDA stated that an advertising claim of "Colic Relief" is a claim that the product is intended for use as a drug and directed the company to contact the FDA's Center for Drug Evaluation and Research.[7]

36.    In June 2021, the FDA stated that the claims "Helps soothe fussiness and crying in colicky babies" and "to reduce fussiness (crying) associated with colic" were unapproved drug claims because "a number of colicky infants have serious medical conditions[.]"[8]

37.    In February 2021, the FDA held that "Colic, Inflammation of the Belly, Abdominal pain …" claims classified a product as "an unapproved new drug" which requires premarket approval.[9]

38.    In March 2018, the FDA found that a gripe water product advertised with the claims "May aid on occasion your baby's problems with . . . cramping . . . ." established that the product was a drug under 21 U.S.C. § 321(g)(1)(B) because it was "intended for use in the cure, mitigation, treatment, or prevention of disease. … introducing or delivering these products for introduction into interstate commerce for such uses violates the Act."[10]

39.    As shown below, there is overwhelming evidence that the labeling claims are false and misleading. Upon information and belief, Defendants did not provide the required Little Remedies Gripe Water labeling claims to the FDA within the 30-day period. The disclaimer is also not prominent. On its packaging, Defendants includes a fine-print statement required by the FDA that the products are not intended to diagnose, treat, cure or prevent any disease. The statement, however, does not disavow the express statements Defendants makes on the packaging. It also directly contradicts these statements in violation of consumer protection law. It is well established that consumers regularly do not read and do not consider the fine-print statement when buying

---

[7]    FDA Warning Letter to Proctor & Gamble Company, dated April 10, 2020, a copy of which is attached as **Exhibit 2**.

[8]    FDA Warning Letter to SmartyPants Vitamins, dated June 28, 2021, a copy of which is attached as **Exhibit 3**.

[9]    https://www.accessdata.fda.gov/cms_ia/importalert_190.html (last visited Nov. 9, 2022)

[10]    FDA Warning Letter to Ozarck Country Herbs, dated March 30, 2018, available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozark-country-herbs-542508-03302018 (last visited Nov. 9, 2022).

dietary supplements. France and Bone (2005) looked at the impact this mandatory statement has on consumer beliefs when interpreting such claims.[11] They found that consumer disease beliefs are not "lower when the [mandatory statement] is used on the package than when it is not." Mason et al. (2007) conducted two surveys about the impact of the mandatory statement on consumer perceptions of safety or efficacy of dietary supplements.[12] The authors concluded "No difference was found in efficacy perceptions for subjects exposed to the disclaimer compared to the control." They also observed that "It is particularly noteworthy that the mandated disclaimer did not impact either efficacy perceptions (as intended) or safety perceptions (as might be expected, given the nature of the disclaimer) any differently than the control message."[13]

40.     Defendants also label Little Remedies with customer reviews to reinforce the product's curative properties. The label states "When my friends ask what I did when my son was colicky I refer them to gripe water! Thank you, it was for sure a life saver!" Defendants' use this as "proof" that the product works like a medicine. Anecdotal comments like this are not scientifically valid, are misleading, and bolster the illegal disease claims printed on the front of the label. In Defendants' public SEC 2022 annual report, Defendants note that they specifically target diseased consumers by driving the marketing of Little Remedies during months when consumer are suffering from disease: "The effectiveness of advertising and marketing campaigns in the third quarter influences sales of products such as *Chloraseptic, Little Remedies, and Luden's* during the fourth quarter cough and cold winter months."

---

[11]     France and Bone, *Policy Makers' Paradigms and Evidence from Consumer Interpretations of Dietary Supplement Labels*, Journal of Consumer Affairs, 39(1):27-51 (2005).

[12]     Mason et al. The Impact of Warnings, Disclaimers, and Product Experience on Consumers' Perceptions of Dietary Supplements. Journal of Consumer Affairs. 2007;41(1):74-99.

[13]     *See also* Kesselheim et al. Mandatory Disclaimers On Dietary Supplements Do Not Reliably Communicate The Intended Issue. Health Affairs. 2015;34(3):438-446 ("We found ample evidence that such disclaimers are often misunderstood or ignored by consumers and had no effects on consumers' ability to understand messages about health care products and critically evaluate potentially unsupported statements about effectiveness or safety."); Tonya Dodge. Consumers' perceptions of the dietary supplement health and education act: implications and recommendations, Drug Testing and Analysis. 2016;8:407-409 ("research suggests that the labelling requirements of DSHEA have little reliable impact on consumer beliefs about the risk and effectiveness of dietary supplements").

41.     Defendants' colic symptom relief advertising on its Little Remedies Gripe Water labeling is near identical to the claims that the FDA has declared illegal—the front of the label states that the Product is for a "newborn," "Gas, Colic + Hiccups," and "Gas, Colic, Hiccups and Fussiness." As such, the sale of Defendants' Little Remedies Gripe Water products is a violation of federal and state law.[14] The products are not legally sold and cannot be legally purchased.

### Defendants' False and Misleading Advertising

42.     Gripe water products were originally developed to treat the symptoms of malaria during the 1800s and originally contained a mixture of baking soda, alcohol, and herbs. Gripe water was thought to help calm a fussy baby. However, any perceived benefit was due to the presence of alcohol. Modern formulations of gripe water do not contain alcohol. However, that does not stop companies, like Defendant, from seeking to capitalize from name recognition of gripe water.

43.     Infants do not need or require the ingredients in Little Remedies Gripe Water. There is no required daily intake for any of the ingredients in Little Remedies—the Centers for Disease Control and Prevention (CDC) states that a child only needs essential vitamins and minerals such as Vitamin D, iron, and zinc to grow healthy and strong.[15] An infant's digestive system does not need any of the ingredients in Little Remedies because the digestive system maintains homeostasis on its own along with the breast milk/formula consumed. Consequently, if a substance such as Little Remedies disrupted this homeostasis, disease and/or increased bacteria, allergies, and intestinal irritation would result.

44.     The scientific community has warned against the use of gripe water for good reason— "newborn infants should not be given food or drink other than breast milk, unless medically indicated."[16]

---

[14]     The FDA regulations at issue are incorporated into California law through the Sherman Food, Drug, and Cosmetic Law ("Sherman Law"). Health & Saf. Code § 110100. In addition to this blanket provision, the Sherman Law adopts the regulatory provisions at issue here. *See id.* at §§ 109925, 111550.

[15]     *See* https://www.cdc.gov/nutrition/infantandtoddlernutrition/vitamins-minerals/index.html (last visited Nov. 18, 2022).

[16]     Adhisivam B. Is gripe water baby-friendly? J. Pharmacol. Pharmacother. 212 Apr;3(2):207-

45.    The scientific community cautions that use of gripe water products like Little Remedies is an "irrational practice" which increases the risk of increased bacteria, allergies, and intestinal irritation.[17] Health Link, a health information service in Canada, also warns new parents, "Do not use unapproved, unproven, or potentially dangerous substances or methods as treatment for your baby who has colic."[18] The World Health Organization specifically recommends that mothers should exclusively breastfeed infants for optimal health.[19] The Canadian Paediatric Society likewise warns "Talk to your doctor before using over-the-counter or 'natural' products for colic. There is very little scientific evidence to show that these products help."[20]

46.    Accordingly, the scientific community has stated that products advertising colic relief "need to be curbed and we should ensure that no promotion for infant foods or drinks other than breast milk is done … doctors should stop prescribing these … medications and laws should be made stringent to prevent over the counter access of the same."[21]

47.    Evidence-based professional and national recommendations for the treatment of infantile colic recommend against the use of gripe water, herbal supplements, or any of the ingredients in Little Remedies Gripe Water.

48.    The American Academy of Family Physicians (AAFP) does not recommend the use of gripe water and herbal supplements including fennel, chamomile, lemon balm.[22] The AAFP warns that the use of herbal products should not be administered as a treatment for infantile colic:

---

8.

[17]    *Id.*

[18]    https://www.healthlinkbc.ca/pregnancy-parenting/parenting-babies-0-12-months/baby-health/colic-harmful-treatments (last visited Nov. 9, 2011).

[19]    Vallenas C, Savage F. *Evidence for the ten steps to successful breastfeeding.* Geneva: World Health Organization/CHD/98.9; 1998. pp. 48–61.

[20]    https://caringforkids.cps.ca/handouts/pregnancy-and-babies/colic_and_crying (last visited Nov. 9, 2022)

[21]    Adhisivam B. Is gripe water baby-friendly? J. Pharmacol. Pharmacother. 2012 Apr;3(2):207-8.

[22]    Johnson J.D. et al. Infantile colic: recognition and treatment. American Family Physician. 2015;92(7):577-582.

FIRST AMENDED CLASS ACTION COMPLAINT

1    "parents should be cautioned about their use."[23] The AAFP also notes that use of herbal products

2    can create a "potential interference with normal feeding."

3          49.    Ellwood et al. (2020) performed a systematic review of the available guidelines for

4    the treatment of infantile colic which was published in the *British Medical Journal*.[24] The aim of

5    the study was to compare meta-data from different systematic review and national treatments

6    guidelines for infantile colic on common outcomes. The authors specifically assessed the

7    effectiveness of several treatment modalities on colic symptoms including infant crying time, sleep

8    distress and adverse events. The authors note the herbal mixtures "may be harmful because herbal

9    mixtures may affect optimal milk consumption." The analysis found that "herbal supplements (e.g.,

10   fennel)" are "non-recommended interventions" by The National Institute for Health and Care

11   Excellence (NICE) on two separate occasions (2015 and 2017). Similarly, gripe water products were

12   reported as a "non-recommended intervention" by American Academy of Family Physicians.

13         50.    The National Institutes of Health (NIH) "Colic and crying – self-care" guide does

14   not recommend the use of gripe water or any other herbal supplements.[25] Instead, the NIH

15   recommends several techniques to comfort and calm an infant.

16         51.    The National Health Service (NHS), the publicly funded healthcare system in

17   England, recently published evidence-based treatment guidelines titled *Managing Colic in Infants

18   Pathway*.[26] The NHS has a "Do not recommend" rating for herbal supplements like Little Remedies.

19         52.    The Royal Children's Hospital (RCH) published evidence-based clinical practice

20   guidelines for unsettled or crying babies in 2019. The guideline has been endorsed by the Paediatric

21   Improvement Collaborative and specifically does not recommend "colic mixtures (e.g., gripe water)

22   – no proven benefit."[27]

23

24   [23]    Roberts D.M. et al. Infantile Colic. American Family Physician. 2004;70(4):735-740.
     [24]    Ellwood J. et al. Comparison of common interventions for the treatment of infantile colic: a

25   systematic review of reviews and guidelines. BMJ Open. 2020;10e035405.
     [25]    *See* MedlinePlus [Internet]. Bethesda (MD): National Library of Medicine (US) available at

26   https://medlineplus.gov/ency/patientinstructions/000753.htm (last visisted Nov. 9, 2022).
     [26]    NHS. *Managing Colic in Infants Pathway* (September 2022).

27

28   [27] https://www.rch.org.au/clinicalguide/guideline_index/Crying_Baby_Infant_Distress/ (last visited
     Nov. 9, 2022).

53.    The British Journal of Family Medicine (BJFM) has published treatment guidelines for infantile colic. The BJFM guidelines "do not support the[] use" of herbal remedies.[28]

54.    Biagioli and colleagues published a systematic review to assess the effectiveness and safety of agents for reducing colic in infants younger than four months of age. The authors utilized the standard methodological procedures of The Cochrane Collaboration. The "Authors conclusions" were "available evidence shows that herbal agents, sugar, … cannot be recommended for infants with colic."[29]

55.    In 2019, peer-reviewed treatment guidelines were published which found that "Herbal remedies should not be given as there are potential risks of side effects, which may interfere with the infant's feeding."[30] Instead, the guidelines recommend parental reassurance and an allergen-restricted diet for mothers with a history of food intolerance or allergies.

56.    Zhang et al. (2015) conducted a comprehensive study using data from the Infant Feeding Practices Study II, a longitudinal survey of women studied from pregnancy through the infant's first year. This was the first study to examine the prevalence of dietary botanical supplement use among US infants. The authors concluded that "many supplements and teas used were marketed and sold specifically for infants" and warn others that "supplements given to infants may pose health risks, health care providers need to recognize that infants under their care may be receiving supplements or teas."[31]

57.    Jain et al. (2015)[32] published a cross-sectional study examining 335 mothers of infants. The authors concluded that gripe water "administration is a common problem in infants and remains a significant challenge that thwarts exclusive breast feeding." The authors also commented

---

[28]    Wall A. and Bogle V. Spotlight: infantile colic. BJFM. 2018;6(4).
[29]    Biagioli_E, Tarasco_V, Lingua_C, Moja_L, Savino_F. Pain-relieving agents for infantile colic. Cochrane Database of Systematic Reviews 2016;9(CD009999).
[30]    Lam T.M.L et al. Approach to infantile colic in primary care. Singapore Med J. 2019;60(1):12-16.
[31]    Zhang Y. et al. Feeding of Dietary Botanical Supplements and Teas to Infants in the United States. Pediatrics. 2015;127(6):1060-1066.

[32]    Jain K. et al. Gripe water administration in Infants 1-6 months of age - a cross-sectional study. Clin Diagn Res. 2015 Nov;9(11):SC06-8.

that gripe water does not prevent infantile colic and may be associated with vomiting and constipation.

58.     Gutiérrez-Castrellón et al. (2017) performed a systematic review and network meta-analysis of clinical trials published between 1960 and 2015 for the treatment of infantile colic. Pooled interventions included in the network meta-analysis were herbal remedies, including the ingredients found in Little Remedies. The authors reported wide confidence intervals in the results with considerable heterogeneity which crossed the line of no effect. In conclusion, the authors did not recommend herbal medicine, including the ingredients in Little Remedies, for colic.[33]

59.     Instead of using sound science, Defendants use scientifically invalid, anecdotal comments which it prints on the Little Remedies packaging. For example, the label states "When my friends ask what I did when my son was colicky, I refer them to gripe water! Thank you, it was for sure a life saver!"  Defendants use this as "proof" that the product works like a medicine. Anecdotal comments like this are not scientifically valid, are misleading, and bolster the illegal disease claims printed on the front of the label. The FDA and Federal Trade Commission regulations state that "advertisers should not make claims either through consumer or expert endorsements that would be deceptive or could not be substantiated if made directly. It is not enough that a testimonial represents the honest opinion of the endorser. Under FTC law, advertisers must also have appropriate scientific evidence to back up the underlying claim."[34] As shown above, the overwhelming scientific evidence concludes that the ingredients in Little Remedies do not work and should not be given to colicky infants. Consumer reviews printed on a product's label or elsewhere are imputed to Defendants and are false.

60.     Defendants' Little Remedies Gripe Water does not relieve colic or the signs and symptoms of colic in newborns or infants. It is not a "Dietary Supplement." The Product is not "Fast Acting." Little Remedies does not help "Newborn +" and does not "Gently Relieve[] Stomach

---

[33]     Gutiérrez-Castrellón P, Indrio F, Bolio-Galvis A, et al. Efficacy of Lactobacillus reuteri DSM 17938 for infantile colic. Systematic review with network meta-analysis. Medicine. 2017;96(51).

[34]     FDA, *Dietary Supplements: An Advertising Guide for Industry* (April 2001).

1    Discomfort from Gas, Colic + Hiccups." Little Remedies is not a "highly effective herbal

2    supplement which eases stomach discomfort often associated with gas, colic, and hiccups." It also

3    is not "a time-tested formula."

4                    **THE IMPACT OF DEFENDANTS' WRONGFUL CONDUCT**

5            61.     Defendants have ignored California law, federal regulations, and the scientific

6    evidence demonstrating Little Remedies ineffectiveness. It has conveyed and continues to convey

7    that Little Remedies is a "dietary supplement" (it is not) capable of benefiting the symptoms of colic

8    (it does not).

9            62.     As the manufacturer and distributor of Little Remedies, Defendants possess

10   specialized knowledge regarding its content and effects of its ingredients, and Defendants are in a

11   superior position to know whether Little Remedies works as advertised.

12           63.     Specifically, Defendants knew, but failed to disclose, or should have known, that

13   Little Remedies is a product that cannot be legally sold and cannot benefit the symptoms of colic.

14           64.     Defendants knew, but failed to disclose, or should have known, that Little Remedies

15   is ineffective at relieving colic because the evidence-based science has determined that Little

16   Remedies does not relieve the signs and symptoms of colic.

17           65.     Plaintiff and the class members have been and will continue to be deceived or misled

18   by Defendants' false and deceptive colic-relief representations.

19           66.     Defendants' colic-relief representations and omissions were a material factor in

20   influencing Plaintiff's and the class members' decision to purchase Little Remedies. In fact, the only

21   purpose for purchasing Little Remedies is to obtain the promised colic-relief benefits. Defendants'

22   conduct has injured Plaintiff and the class members because Little Remedies does not provide the

23   advertised benefits. Had Plaintiff and other reasonable consumers known this, they would not have

24   purchased Little Remedies or would not have paid the prices they paid. Furthermore, had Plaintiff

25   and other reasonable consumers known that Little Remedies is not a dietary supplement and cannot

26   be legally sold, they would not have purchased Little Remedies or would not have paid the prices

27   they paid.

28

67.     Little Remedies retails for approximately $15 per unit. Because of Defendants' unlawful, false, and deceptive advertising, Little Remedies Gripe Water has become one of the highest-selling products in the gripe water category.

## NO ADEQUATE REMEDY AT LAW

68.     Plaintiff and members of the Class and Subclass are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. The statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately two and six years. California Subclass members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Multi-State Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

69.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products with the Colic Relief representations, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). This is especially important here because Plaintiff alleges Defendants have committed "unlawful" acts by failing to comply with FDA and California Health & Safety Code regulations and brings a claim for violation of the UCL's "unlawful prong." No other causes of actions allow this claim to proceed, and thus, there is no adequate remedy at law for this specific violation of the UCL's unlawful prong. Plaintiff's UCL unlawful prong claim does not rest on the same conduct as his other causes of action, and there is no adequate remedy at law for this specific claim. Plaintiff and Class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited

1    to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods

2    or services for personal, family, or household purposes) and other statutorily enumerated conduct).

3    Similarly, unjust enrichment/restitution is broader than breach of warranty.

4         70.    Injunctive relief is appropriate on behalf of Plaintiff and members of the Class

5    because Defendants continue to misrepresent the Products with the Colic Relief representations and

6    violate federal and state regulations. Injunctive relief is necessary to prevent Defendants from

7    continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to

8    prevent future harm—none of which can be achieved through available legal remedies (such as

9    monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures

10   is necessary to dispel the public misperception about the Products that has resulted from years of

11   Defendants' unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but

12   are not limited to, publicly disseminated statements that the Products' labeling misrepresentations

13   are not true and providing accurate information about the Products' true nature; and/or requiring

14   prominent qualifications and/or disclaimers on the Products' front label concerning the Products'

15   true nature. An injunction requiring affirmative disclosures to dispel the public's misperception, and

16   prevent the ongoing deception and repeat purchases, is also not available through a legal remedy

17   (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the

18   damages caused by Defendants' future harm, because discovery and Plaintiff's investigation have

19   not yet completed, rendering injunctive relief necessary. Further, because a public injunction is

20   available under the UCL, and damages will not adequately benefit the general public in a manner

21   equivalent to an injunction.

22        71.    It is premature to determine whether an adequate remedy at law exists. This is an

23   initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been

24   certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-

25   expert and expert discovery, as well as the certification of this case as a class action, are necessary

26   to finalize and determine the adequacy and availability of all remedies, including legal and equitable,

27   for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves their

28   right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction

to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this class action on behalf of the following classes:

**Multi-State Unjust Enrichment Class**

All persons who purchased Little Remedies Gripe Water within the applicable statute of limitations in California and other states with similar unjust enrichment laws for personal use until the date notice is disseminated.

**Multi-State Express Warranty Class**

All persons who purchased Little Remedies Gripe Water within the applicable statute of limitations in California and other states with similar express warranty laws for personal use until the date notice is disseminated.

**Multi-State Implied Warranty Class**

All persons who purchased Little Remedies Gripe Water within the applicable statute of limitations in California and other states with similar implied warranty laws for personal use until the date notice is disseminated.

**California Subclass**

All persons who purchased Little Remedies Gripe Water within the applicable statute of limitations in California for personal use until the date notice is disseminated.

(referred to collectively as the "Class")

73.     Excluded from the from the Class are: (i) Defendants and their officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

74.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

75.     The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

1    76.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is

2    impracticable. Plaintiff believes that there are thousands of consumers who are Class Members

3    described above who have been damaged by Defendants' deceptive and misleading practices.

4    77.    <u>Commonality</u>: There is a well-defined community of interest in the common

5    questions of law and fact affecting all Class Members. The questions of law and fact common to the

6    Class Members which predominate over any questions which may affect individual Class Members

7    include, but are not limited to:

8    a.    Whether Defendants are responsible for the conduct alleged herein which was

9    uniformly directed at all consumers who purchased the Products;

10   b.    Whether Defendants' misconduct set forth in this Complaint demonstrates that

11   Defendants engaged in unfair, fraudulent, or unlawful business practices with respect to the

12   advertising, marketing, and sale of the Products;

13   c.    Whether Defendants made false and/or misleading statements concerning the

14   Products that were likely to deceive the public;

15   d.    Whether Plaintiff and the Class are entitled to injunctive relief;

16   e.    Whether Plaintiff and the Class are entitled to money damages under the same causes

17   of action as the other Class Members.

18   78.    <u>Typicality</u>: Plaintiff is a member of the Classes Plaintiff seeks to represent. Plaintiff's

19   claims are typical of the claims of each Class Member in that every member of the Class was

20   susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is

21   entitled to relief under the same causes of action as the other Class Members.

22   79.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests

23   do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer

24   fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in

25   vindicating Plaintiff's rights; Plaintiff has retained counsel competent and experienced in complex

26   class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no

27   interests which conflict with those of the Class. The Class Members' interests will be fairly and

28   adequately protected by Plaintiff and proposed Class Counsel. Defendants have acted in a manner

generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

80.     The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.     The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.     The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.     When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.     This class action will assure uniformity of decisions among Class Members;

g.     The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.     Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.     It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendants' uniform false advertising to purchase the Products.

81.     In the alternative, the Class also may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

82.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendants from engaging in the acts described, and to require Defendants to provide full restitution to Plaintiff and Class members.

83.     Unless the Class is certified, Defendants will retain monies that were taken from Plaintiff and Class members as a result of Defendants' wrongful conduct. Unless a classwide injunction is issued, Defendants will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

### COUNT I

**Violation of Consumer Legal Remedies Act ("CLRA")**
**Civil Code §§ 1750, *et seq***

84.     Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs as if fully set forth verbatim herein.

85.     Plaintiff brings this claim individually and on behalf of the Subclass against Defendants.

86.     At all times relevant hereto, Plaintiff and members of the Class were "consumer[s]," as defined in Civil Code section 1761(d).

87.     At all relevant times, Defendants constituted a "person," as defined in Civil Code section 1761(c).

88.     At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendants constituted "goods," as defined in Civil Code section 1761(a).

89.     The purchases of the Products by Plaintiff and members of the Class were and are "transactions" within the meaning of Civil Code section 1761(e).

90.     Defendants disseminated, or caused to be disseminated, through its advertising—including the Products' labeling that they provide colic-relief and are lawfully sold in the United States which they are not because the Products do not provide relief from the symptoms of colic and are illegal unapproved drugs. Defendants' representations violate the CLRA by:

(a)     Defendants represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Civil Code § 1770(a)(5));

(b)     Defendants represented that the Products are of a particular standard, quality, or grade, which they are not (Civil Code § 1770(a)(7));

(c)     Defendants advertised the Products with an intent not to sell the Products as advertised (Civil Code § 1770(a)(9)); and

(d)     Defendants represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Civil Code § 1770(a)(16)).

91.     Defendants violated the CLRA because the Products do not relieve the symptoms of colic and are not legally sold. Defendants knew or should have known that its Products do not relieve the symptoms of colic and are not capable of being legally sold.

92.     Defendants' actions as described herein were done with conscious disregard of Plaintiff's rights and was wanton and malicious.

93.     Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendants are still representing that its Products have characteristics which they do not have.

94.     Pursuant to Civil Code section 1782(d), Plaintiff and members of the Class seek an order enjoining Defendants from engaging in the methods, acts, and practices alleged herein, and for restitution and disgorgement.

95.     Pursuant to Civil Code section 1782, Plaintiff notified Defendants in writing by certified mail of the alleged violations of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. A copy of the letter is attached as **Exhibit 4**. Defendants has failed to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the CLRA. Thus, Plaintiff seeks actual, punitive, and statutory damages, as appropriate.

96.     Pursuant to § 1780(d) of the CLRA, attached as **Exhibit 5** is an affidavit showing that this action was commenced in a proper forum.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**COUNT II**</u>

**Violation of False Advertising Law**
**Business & Professional Code §§ 17500, *et seq.***

97.     Plaintiff and members of the Class reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

98.     Plaintiff brings this claim individually and on behalf of the California Subclass against Defendants.

99.     California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,…in any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning…personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

100.     Throughout the Class Period, Defendants committed acts of false advertising, as defined by § 17500, by using false and misleading statements to promote the sale of Little Remedies, as described above, including but not limited to, representing that Little Remedies could relieve stomach discomfort and colic in newborns, when in fact they could not.

101.     Defendants knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

102.     Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

103.     As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Class would not have purchased the Products if they had known the true facts regarding the effectiveness of the Products; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations about the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

104.     Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective advertising and disclosures to consumers. Plaintiff and members of the California Subclass are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

### COUNT III

**Violation of Unfair Competition Law**
**Business & Professional Code §§ 17200, *et seq.***

105.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

106.     Plaintiff brings this claim individually and on behalf of members of the California Subclass against Defendants.

107.     Defendants are subject to the UCL, Bus. & Prof. Code § 17200 *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for violations.

108.     "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

109.     Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

110.     Defendants have violated the UCL's "unlawful prong" as a result of its violations of the CLRA, and FAL, as well as by breaching express and implied warranties as described herein. By failing to comply federal and state regulations governing drugs and dietary supplements, Defendants have also violated 21 U.S.C. § 343(r)(6), 21 U.S.C. § 343(a), 21 U.S.C. § 321(g)(1)(B),

1    21 U.S.C. §§ 332-334 and California Health & Saf. Code §§ 109925, 110100, 111550. Throughout

2    the Class Period, Defendants committed acts of unfair competition, as defined by § 17200, by using

3    unlawful, false, and misleading statements to promote the sale of the Products, as described above.

4           111.    Defendants' misrepresentations and other conduct, described herein, violated the

5    "unfair prong" of the UCL because the conduct is substantially injurious to consumers, offends

6    public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct

7    outweighs any alleged benefits. Defendants' conduct is unfair in that the harm to Plaintiff and

8    members of the California Subclass arising from Defendants' conduct outweighs the utility, if any,

9    of those practices.

10          112.    Defendants' practices as described herein are of no benefit to consumers who are

11   tricked into believing that the Products will provide relief for stomach discomfort for their newborns.

12   Defendants' practice of injecting misinformation into the marketplace about the capabilities of its

13   Products is unethical and unscrupulous, especially because consumers trust companies like

14   Defendants to provide accurate information about Products for newborns. Taking advantage of that

15   trust, Defendants misrepresents the effectiveness of its Products to increase its sales. Consumers

16   believe that Defendants are an authority on the effectiveness and quality of gripe water Products for

17   their newborns and therefore believe Defendants' representations that its Products can magically

18   provide stomach relief for their newborns.

19          113.    Defendants' conduct described herein, violated the "fraudulent" prong of the UCL

20   by representing that the Products were effective at providing relief related for stomach discomfort

21   in newborns, when in fact they were not.

22          114.    Plaintiff and members of the California Subclass are not sophisticated experts with

23   independent knowledge of the formulations or efficacy of gripe water Products, and they acted

24   reasonably when they purchased the Products based on their belief that Defendants' representations

25   were true.

26          115.    Defendants knew or should have known, through the exercise of reasonable care, that

27   its representations about the Products were untrue and misleading.

28

116.    As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the California Subclass have suffered injury and actual out of pocket losses as a result of Defendants' unfair, unlawful, and fraudulent business acts and practices because: (a) Plaintiff and members of the California Subclass would not have purchased the Products on the same terms if they had known the true facts regarding the effectiveness and contents of the Products; (b) Plaintiff and members of the California Subclass paid a price premium due to the misrepresentations of Defendants' Products; and (c) Defendants' Products did not have the quality and effectiveness or value as promised.

117.    Pursuant to California Business & Professions Code § 17203, Plaintiff and members of the California Subclass are therefore entitled to: (a) an Order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs.

## COUNT IV
### Breach of Express Warranty

118.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

119.    Plaintiff brings this claim individually and on behalf of the members of the Multi-State Express Warranty Class and the California Subclass against Defendants.

120.    As the designer, manufacturer, marketer, distributer, and/or seller, Defendants expressly warranted that the Products are effective in treating stomach discomfort and colic.

121.    Defendants' affirmations of fact and promise made to Plaintiff and the Class on the Products' labels, became part of the basis of the bargain between Defendants on the one hand, and Plaintiff and Class members on the other, thereby creating express warranties that the Products would conform to Defendants' affirmations of fact, representations, promises, and descriptions.

122.    However, the scientific evidence shows that the Products cannot provide any appreciable relief to consumers. Moreover, to the extent any of the ingredients could potentially

provide relief to consumers, the quantities they are provided in are far too low to provide any therapeutic benefit.

123.    As such, Defendants breached this warranty because the Products are not effective for providing the advertised relief. In short, the Products do not perform as expressly warranted.

124.    Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Products on the same terms if they had known the true facts; (b) they paid a price premium due to the mislabeling of the Products; and (c) the Products did not have the quality, effectiveness or value as promised.

125.    Prior to filing this action, Plaintiff served a pre-suit notice letter on Defendants that complied in all respects with U.C.C. § 2-607. Plaintiff and the Class sent Defendants a letter via certified mail, return receipt requested, advising Defendants that it breached numerous warranties and violated state consumer protection laws, and demanding that Defendants cease and desist from such violations and make full restitution by refunding the monies received therefrom. *See* **Exhibit 4**.

## <u>COUNT V</u>
### Breach of Implied Warranty

126.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

127.    Plaintiff brings this claim individually and on behalf of the members the Multi-State Implied Warranty Class and the California Subclass against Defendants.

128.    Defendant, through its acts and omissions set forth herein, in its sale, marketing, and promotion of the Products made implied representations to Plaintiff and the Class that the Products were fit for the particular purpose of providing relief related to stomach discomfort in newborns. However, the Products are not capable of providing the aforementioned benefits. At the time the Products were sold, Defendants knew or should have known that Plaintiff and members of the Class would rely on Defendants' skill and judgment regarding the efficacy of the Products. The Products do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used.

1      129.    Defendants, merchants of goods, made promises and affirmations of fact that the

2 Products are merchantable and conform to the promises or affirmations of fact made on the

3 Products' packaging and labeling, and through its marketing and advertising. Plaintiff alleges the

4 implied warranty was breached because Defendant's Products do not conform to the Colic Relief

5 labeling promises which were a basis of the bargain between the parties.

6      130.    In reliance on Defendants' skill and judgment and the warranties, Plaintiff and

7 members of the Class purchased the Products for use to provide stomach relief for newborns.

8 Plaintiff relief on the labeling representations by Defendants, both of which are manufacturers that

9 developed and created the Products and the Products' labeling. Plaintiff and consumers are the

10 intended beneficiaries of the Products.

11      131.    The Products were not altered by Plaintiff or Class members.

12      132.    Defendants knew that the Products would be purchased and used without additional

13 testing by Plaintiff and Class members.

14      133.    Plaintiff and members of the Class have sustained damages as a direct and proximate

15 result of Defendants' breach because: (a) they would not have purchased the Products if the true

16 facts concerning their efficacy had been known; (b) they paid a price premium for the Products

17 based on Defendants' representations regarding the Products' efficacy; and (c) the Products did not

18 have the characteristics, uses, or benefits as promised. As a result, Plaintiff and members of the

19 Class have been damaged.

20 **COUNT VI**

21 **Unjust Enrichment**

22      134.    Plaintiff and Class Members reallege and incorporate by reference each allegation

23 set forth above as if fully set forth herein.

24      135.    Plaintiff brings this claim individually and on behalf of the members of the Multi-

25 State Unjust Enrichment Class and the California Subclass against Defendants.

26      136.    Plaintiff and Class members conferred a benefit on Defendants by purchasing the

27 Products and by paying a price premium for them. Defendants have knowledge of such benefits.

28

137.    Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because Defendants misrepresented that the Products were effective in treating stomach discomfort and colic. This misrepresentation cause injuries to Plaintiff and Class Members, because they would not have purchased the Products if the true facts regarding the effectiveness of the Products were known.

138.    Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## JURY DEMAND

139.    Plaintiff demands a trial by jury on all issues so triable.

## REQUEST FOR RELIEF

Plaintiff, individually and on behalf of the Class and Subclass, requests for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Multi-State Classes and the California Subclass, and Plaintiff's attorneys as Class Counsel to represent the Multi-State Classes and California Subclass members;

(b) An order declaring Defendants' conduct violates the statutes referenced herein;

(c) Entering preliminary and permanent injunctive relief against Defendant, directing Defendants to correct its practices and to comply with consumer protection statutes nationwide;

(d) Awarding monetary damages, including treble damages

(e) Awarding punitive damages;

(f) Awarding Plaintiff and Multi-State Class and Subclass Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

1

Dated: February 10, 2023                          **CROSNER LEGAL, P.C.**

2

3                                              By: */s/ Zachary M. Crosner*
                                                      Michael R. Crosner
                                                      Zachary M. Crosner
4                                                     Chad A. Saunders
                                                      Craig W. Straub
5
                                               Attorneys for Plaintiff
6

7                           **CERTIFICATE OF SERVICE**

8            I hereby certify that on February 10, 2023, I electronically filed the foregoing with the Clerk

9    of the Court using the CM/ECF system which will send notification of such filing to the e-mail

10   addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the

11   foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

12   indicated on the Electronic Mail Notice List.

13           I certify under penalty of perjury under the laws of the United States of America that the

14   foregoing is true and correct. Executed on February 10, 2023.

15
                                                    *s/  Craig W. Straub*
16                                                  CRAIG W. STRAUB

17                                   CROSNER LEGAL, P.C.
                                     9440 Santa Monica Blvd. Suite 301
18                                   Beverly Hills, CA 90210
                                     Tel: (310) 496-5818
19                                   Fax: (310) 510-6429
                                     craig@crosnerlegal.com
20

21

22

23

24

25

26

27

28